**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Brooke W.G. and Michael G., individually and on behalf of M.G., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. |
| Chester County Intermediate Unit, | : | |
| Defendant. | : | |

# COMPLAINT

## PRELIMINARY STATEMENT

1. This action is brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (Section 504); and the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (ADA).

2. Plaintiffs Brooke W.G. and Michael G. (Parents), individually and on behalf of their child, M.G., filed a special-education due process complaint against the Chester County Intermediate Unit (CCIU) on September 26, 2025 and amended it on October 13, 2025 and October 31, 2025.

3. Parents filed their due process complaint because the CCIU failed to provide M.G.—a child with autism, childhood apraxia of speech (CAS), expressive and receptive language delays, and severe sensory dysregulation—a free appropriate public education (FAPE) and otherwise discriminated against M.G.

4. Parents sought, among other relief, tuition reimbursement for the 2024-2025 school year and declaratory and injunctive relief.

5. On June 2, 2026, a Pennsylvania Special Education Hearing Officer issued a decision, attached as Exhibit A, concluding that the CCIU denied M.G. FAPE and awarding Parents tuition reimbursement for part of the 2024-2025 school year (August 2024 to December 2024).

6. Parents bring this action to challenge the Hearing Officer's denial of tuition reimbursement for the remainder of the 2024-2025 school year (January 2025 to June 2025), and to vindicate M.G.'s and Parents' rights under the IDEA, Section 504, and the ADA.

**JURISDICTION**

7. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343, and 1367 and the IDEA, the ADA, and Section 504.

8. Venue in this district is proper under 28 U.S.C. § 1391(b).

9. Parents have fully exhausted their administrative remedies.

**PARTIES**

10. Brooke W.G. and Michael G. are M.G.'s parents.

11. M.G. is a "child with a disability" within the meaning of the IDEA. 20 U.S.C. § 1402(3)(A).

12. M.G. has autism, CAS, expressive and receptive language delays, and severe sensory dysregulation.

13. As a result of those disabilities, M.G. is eligible for special-education services under the IDEA.

14. M.G. is an "individual with a disability" within the meaning of Section 504 and the ADA.

15. M.G. is otherwise qualified to participate in school activities within the meaning of Section 504 and the ADA.

16. The CCIU is a local educational agency (LEA) within the meaning of the IDEA.

17. The CCIU provides special-education services and supports to children with disabilities who live within its catchment area, including preschool-age children and children in elementary school.

18. At all relevant times, the CCIU was the agency responsible for providing M.G. special-education and related services to ensure he receives FAPE under the IDEA.

19. M.G. remains eligible to receive services from the CCIU.

20. The CCIU must comply with the IDEA's requirements.

21. The CCIU receives federal funding.

22. The CCIU must comply with the requirements of Section 504.

23. The CCIU must comply with the requirements of the ADA.

24. The CCIU is a "program or activity" receiving federal financial assistance under Section 504.

25. The CCIU is a "public entity" under the ADA.

**STATUTORY AND REGULATORY BACKGROUND**

26. Congress passed the IDEA so that "children with disabilities . . . have access to a free appropriate public education" (FAPE). 20 U.S.C. § 1400(c)(3).

27. To afford a child FAPE, an LEA must provide her an Individualized Education Program (IEP). 20 U.S.C. § 1412(a)(4).

28. IEPs must be ambitious and reasonably calculated to provide the child meaningful educational progress. *See Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 388 (2017); *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000).

29. If an LEA denies a child FAPE, her parents can file a due process complaint against the LEA. 20 U.S.C. § 1415(b)(7).

30. Section 504 and the ADA require LEAs to provide children with disabilities FAPE. *See Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) ("[W]hen a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA" and "it also violates the RA because it is denying a disabled child a guaranteed education merely because of the child's disability."); *Indiana Area Sch. Dist. v. H.H.*, 428 F. Supp. 2d 361, 363 n.3 (W.D. Pa. 2006) ("[T]he Third Circuit generally has held that the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA[.]").

31. Section 504 and the ADA also bar covered entities from excluding, denying benefits to, or otherwise discriminating against qualified individuals with disabilities. 29 U.S.C. § 794(a); 28 C.F.R. § 35.130.

32. A covered entity engages in discrimination under the ADA and Section 504 if it fails to provide a student reasonable accommodations or supplemental services, or it denies the student "*equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity." 28 C.F.R. § 35.160(b)(1) (emphasis added).

33. The ADA extends the nondiscrimination rules of Section 504 to public entities even if they do not receive federal funds. 42 U.S.C. § 12132.

34. Title II of the ADA specifically requires public schools to provide reasonable accommodations to students with disabilities. 28 C.F.R. § 35.130(b)(7)(i).

35. When an LEA denies a student FAPE or excludes her from participation in its program, denies her the benefits of the program, or otherwise discriminates against her, her parents may be entitled to various remedies under the IDEA, Section 504, and the ADA—including compensatory education and reimbursement for private-school tuition. *See Florence Cnty. Sch. Dist. v. Carter*, 510 U.S. 7, 12–16 (1993) (tuition reimbursement is an equitable

remedy under the IDEA); *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 249 (3d Cir. 1999) (same for compensatory education).

36. Compensatory education is funding that a student can use for private tutoring and other services that help close educational gaps arising from IDEA, Section 504, and ADA violations.

37. Parents who prevail in a due process hearing are entitled to their reasonable attorney's fees and costs.

38. Parents can challenge a hearing officer decision in this Court. *See*, *e.g.*, 20 U.S.C. § 1415(i)(2).

**STATEMENT OF FACTS**

39. M.G. is seven years old.

40. M.G. has autism, CAS, severe expressive and receptive language disorders, and significant sensory dysregulation.

41. M.G's primary disability under the IDEA is autism.

42. M.G. has profound educational needs.

43. M.G. is primarily nonverbal, struggles with motor speech skills, has difficulty following directions and understanding language, has limited social skills, has attentional deficits, has significant sensory needs, and has deficits in all academic areas.

44. Even so, M.G. has the ability to learn and make educational progress.

45. Though M.G. struggles with verbal communication, he has demonstrated the ability to learn, communicate, and complete academic tasks.

46. M.G. lives with Parents, within the CCIU's catchment area.

47. M.G. currently attends a public elementary school—Valley Forge Elementary School in the Tredyffrin-Easttown School District.

48. M.G. began attending Valley Forge in kindergarten, during the 2025-2026 school year.

49. In the summer before kindergarten, Valley Forge offered M.G. a full-day special-education program, five days per week.

50. Parents accepted that offer because it met M.G.'s significant needs, and they placed him in Valley Forge.

51. Before M.G. entered kindergarten, the CCIU had a duty to provide him FAPE.

52. But when M.G. was a preschool-age student, the CCIU repeatedly denied him FAPE, otherwise discriminated against him, and denied Parents meaningful participation in the special-education process.

53. The CCIU never offered M.G. a full-day special-education program.

54. The CCIU never offered M.G. more than 11 hours of specialized instruction per week.

55. The CCIU has a policy or practice of offering preschool-age children with M.G.'s disabilities no more than 11 hours of specialized instruction per week.

56. The CCIU operates a half-day early intervention classroom, which serves preschool-age students 11 hours per week and did so during the 2024-2025 school year.

57. The CCIU considers its half-day early intervention classroom to be a full-time program for preschool-age students.

58. During the 2022-2023 school year, the CCIU provided over 99% of its early-intervention children who had a primary disability of autism an IEP that offered 12 hours or less of specialized instruction per week.

59. During the 2023-2024 school year, the CCIU provided over 99% of its early-intervention children who had a primary disability of autism an IEP that offered 12 hours or less of specialized instruction per week.

60. During the 2024-2025 school year, the CCIU provided over 99% of its early-intervention children who had a primary disability of autism an IEP that offered 12 hours or less of specialized instruction per week.

61. The CCIU's 11-hour policy or practice violates the IDEA's individualization requirement and denies parents meaningful participation in the IEP process.

62. The CCIU's 11-hour policy or practice is discriminatory.

63. The CCIU provides nondisabled preschool-age children full-day educational programming through its Head Start program.

64. The CCIU provided nondisabled preschool-age children full-day educational programming through its Head Start program during the 2024-2025 school year.

65. Head Start is a classroom-based program.

66. The CCIU provides children enrolled in Head Start educational instruction.

67. Nondisabled children participate in the CCIU's Head Start program and did so during the 2024-2025 school year.

68. The CCIU's Head Start program services children between ages 3 and 5.

69. The CCIU has several locations that provide Head Start, including the CCIU's Pickering campus.

70. During the school year, the CCIU's Head Start program serves children for six hours per day, and it did so during the 2024-2025 school year.

71. The CCIU's Head Start program serves children five days per week, unless there is a holiday or other scheduled day off, and it did so during the 2024-2025 school year.

72. The CCIU provides some children with disabilities whose needs are less profound than M.G.'s full-day educational programming.

73. Because of the CCIU's violations of M.G.'s and Parents' rights, Parents had to pay for him to attend a private school that serves preschool-age children with disabilities during the 2024-2025 school year.[1]

**The CCIU fails to offer M.G. FAPE for the 2024-2025 school year.**

74. In September 2023, the CCIU developed an IEP for M.G., and it amended the IEP in February 2024.

75. The CCIU predetermined the special-education services in the IEP and denied Parents meaningful participation in the IEP process.

76. The IEP offered M.G. 11 hours per week of specialized instruction, per the CCIU's policy or practice of offering children with M.G.'s disabilities a maximum of 11 hours of instruction per week.

77. Parents' input about M.G.'s needs was irrelevant to the CCIU.

78. The CCIU's offer of 11 hours per week was nonnegotiable.

79. The CCIU also included services in the IEP that it knew it would not provide M.G.

80. The IEP offered M.G. 11 hours of specialized instruction and 2.25 hours of related services each week.

81. The related services included 45 minutes of speech-and-language therapy, 30 minutes of physical therapy, and 60 minutes of occupational therapy.

---

[1] The CCIU likewise denied M.G. FAPE and otherwise discriminated against him during the 2023-2024 school year by predetermining his services, offering him inappropriate services, and denying him equal educational opportunity. Parents are currently litigating their claims for that school year in this Court. *See Brooke W. v. CCIU*, No. 25-cv-306 (E.D. Pa.).

82. Yet the CCIU placed M.G. in an educational program that operated only 11 hours per week (the CCIU's half-day early intervention classroom). In other words, even under M.G.'s improperly capped IEP he was entitled to 13.75 hours each week of education and related services, but if Parents had accepted the IEP, M.G. would have only received 11 hours total each week in education and services.

83. When the CCIU implemented the IEP in fall 2023, the CCIU only provided M.G. specialized instruction during the 11-hour weekly block in which he attended the CCIU's half-day early intervention classroom.

84. When the CCIU implemented the IEP in fall 2023, the CCIU only provided M.G. related services during the 11-hour weekly block in which he attended the CCIU's half-day early intervention classroom.

85. The goals in the IEP were inappropriate.

86. The IEP lacked sufficient speech-and-language services.

87. The IEP lacked appropriate supports for M.G.'s sensory needs.

88. The IEP lacked sufficient specially designed instruction.

89. The special-education services in the IEP expired near the start of the 2024-2025 school year.

90. In August 2024, Parents requested an offer of FAPE for the 2024-2025 school year.

91. Parents also put the CCIU on notice in August 2024 that if it did not offer M.G. an appropriate IEP for the 2024-2025 school year, they would place M.G. in a private school at public expense.

92. CCIU staff, however, did not contact Parents in August 2024 in response. Staff tried emailing M.G.'s mother, but they emailed the wrong address and did not attempt to contact

her or M.G.'s father by any other means, despite having additional contact information in the CCIU's files.

93. By mid-September 2024, the CCIU still had not contacted Parents, so M.G. had no offer of FAPE for the 2024-2025 school year even though the year had begun. Ex. A at 15–16.

94. In mid-September 2024, Parents enrolled M.G. in the TALK School for the 2024-2025 school year. Ex. A at 16.

95. Over a month later, the CCIU finally contacted Parents. On November 1, 2024, the CCIU for the first time used Parents' correct email address and responded to their August 2024 emails.

96. But the CCIU did not offer M.G. an IEP for the 2024-2025 school year until several months later—in February 2025.

97. The CCIU offered M.G. another IEP in March 2025.

98. The CCIU's February and March 2025 IEPs were also inadequate to meet M.G.'s needs, and the CCIU again denied Parents meaningful participation in creating those IEPs.

99. The TALK School is a private school that specializes in educating children with speech-and-language disorders who may also have autism and other disorders.

100. The TALK School is a licensed, private academic school in Pennsylvania.

101. LEAs have placed students with disabilities at the TALK School.

102. M.G. attended the TALK School for part of the 2023-2024 school year, and he made progress there. *See* Ex. A at 14–15.

103. During the 2023-2024 school year, the TALK School provided M.G. a full-day program—"five days per week for 6.5 hours per day." Ex. A at 10.

104. The TALK School again offered M.G. a full-day program for the 2024-2025 school year.

105. When Parents enrolled M.G. in the TALK School for the 2024-2025 school year, Parents signed an enrollment contract, which required them to pay TALK's tuition for the entire school year.

106. Parents undertook that burdensome financial obligation because the CCIU failed to offer M.G. FAPE and otherwise discriminated against him, leaving Parents no choice but to pursue a private placement.

107. M.G. attended the TALK School until June 2025.

108. Throughout the 2024-2025 school year, the TALK School provided M.G. special-education services and supports tailored to his unique needs.

109. M.G.'s classroom at TALK had a special-education teacher and a Registered Behavior Technician; TALK assigned him a dedicated aide; and TALK provided him structured multisensory instruction, daily individualized speech-and-language therapy, a sensory diet, and occupational therapy, among other interventions.

110. Because TALK is a private school, the IDEA does not apply to TALK.

111. Because TALK is a private school, TALK did not have to provide M.G. an IEP.

112. Still, TALK developed an IEP document for M.G. and incorporated into it many of the individualized goals that TALK had for M.G.

113. On top of the goals in the document, TALK worked on speech-and-language and occupational-therapy goals with M.G.

114. TALK's speech-and-language and occupational-therapy goals are reflected in TALK's progress monitoring for M.G.

115. M.G. made meaningful progress at the TALK School during the 2024-2025 school year.

116. The TALK School prepared M.G. for kindergarten.

117. In summer 2025, M.G.'s local school district, the Tredyffrin-Easttown School District, evaluated M.G. and provided him an IEP for kindergarten.

118. The IEP offered a full-day, 33-hour-per-week special-education program.

119. M.G. attended the District for kindergarten.

120. M.G. still attends public school in the District.

121. The CCIU provides services to students who attend school in the District.

**Parents file for due process, and the Hearing Officer agrees that the CCIU denied M.G. FAPE.**

122. In fall 2025, Parents requested a due process hearing, asserting that the CCIU denied M.G. FAPE, otherwise discriminated against him during the 2024-2025 school year, and denied Parents meaningful participation in the IEP process.

123. Parents alleged, among other things, that the CCIU denied M.G. an appropriate IEP and predetermined his educational program and otherwise discriminated against him by offering him only 11 hours of services per week due to the CCIU's policy or practice of capping services at that amount for certain children with disabilities.

124. As relief for those violations, Parents requested tuition reimbursement for the TALK School for the 2024-2025 school year (and compensatory education in the alternative); an order declaring illegal any CCIU policy or practice of capping its specialized instruction; and an order requiring the CCIU to make individualized determinations about students' special-education services.

125. Parents also requested an Independent Educational Evaluation, but the parties

settled that claim.

126. Parents sought to amend their complaint to add allegations that the CCIU's predetermination denied Parents meaningful participation.

127. The Hearing Officer erroneously denied Parents' request to amend.

128. The Hearing Officer erroneously refused to consider Parents' policy-or-practice claims because the claims are also at issue in *Brooke W. v. CCIU*, No. 25-cv-306 (E.D. Pa.), which is pending before this Court.

129. The Hearing Officer refused to consider evidence that Parents offered in support of their claims that the CCIU denied M.G. equal educational opportunity under Section 504 and the ADA. That was legal error.

130. The Hearing Officer excluded evidence supporting Parents' claims under Section 504 and the ADA, namely, evidence that the CCIU provides full-day educational programming to nondisabled preschool-age children. That too was legal error.

131. The Hearing Officer erroneously excluded evidence that Parents included in their supplemental 5-day notice of evidence under 34 C.F.R. § 300.512.

132. The Hearing Officer limited the scope of the due process hearing to Parents' request for tuition reimbursement for the 2024-2025 school year.

133. A parent is entitled to tuition reimbursement for a private placement if she establishes (1) that her child's LEA failed to provide FAPE and (2) that the private placement was appropriate for the child. *See Mary Courtney T. v. Sch. Dist.*, 575 F.3d 235, 242 (3d Cir. 2009). A hearing officer, however, can reduce an award of tuition reimbursement if the hearing officer finds that the parent did not provide the LEA timely notice that she was enrolling the child in the private placement, or the hearing officer finds that the parent acted unreasonably. *See* 20 U.S.C. § 1412(a)(10)(C)(iii).

134. A private placement is appropriate if it was reasonably calculated to "provide[] significant learning and confer[] meaningful benefit" to the child. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 276 (3d Cir. 2007). Whether a private placement is appropriate must be judged *at the time* the parent placed her child in the placement. *See Rairdan M. v. Solanco Sch. Dist.*, 1998 U.S. Dist. LEXIS 10352, *14–15 (E.D. Pa. July 13, 1998).

135. After the parties' due process hearing, the Hearing Officer concluded that the CCIU denied M.G. FAPE during the 2024-2025 school year and that the TALK School was appropriate for M.G. when Parents placed him at the school. *See* Ex. A at 30–31.

136. The Hearing Officer did not find that Parents acted unreasonably or failed to provide the CCIU notice. *See* Ex. A at 28–32.

137. Based on those conclusions, the Hearing Officer awarded Parents tuition reimbursement.

138. But the Hearing Officer did not award them tuition reimbursement for the entire 2024-2025 school year.

139. Instead, the Hearing Officer limited their award to tuition reimbursement for August 2024 to December 2024. Ex. A. at 32.

140. The Hearing Officer concluded that Parents are not entitled to tuition reimbursement for January 2025 to the end of the school year (June 2025) because starting in January 2025, the TALK School provided M.G. "pre-academic or academic" goals, and in the Hearing Officer's view, such goals were too ambitious for M.G. Ex. A. at 31.

141. The Hearing Officer erred as a matter of law in reducing tuition reimbursement on that basis.

142. No part of the IDEA's tuition-reimbursement test permits hearing officers to reduce tuition reimbursement based on events that occur months after the LEA denies a child

FAPE and her parent enrolls her in a private placement because, as noted, the private placement must be judged *at the time* the parent placed her child in the placement, not at some subsequent point.

143. Even if hearing officers could consider such after-the-fact developments, the Hearing Officer erred in concluding that the TALK School was inappropriate starting in January 2025.

144. The Hearing Officer applied the wrong legal standard in reaching that conclusion, and the Hearing Officer's critique of M.G.'s goals was flawed in any event.

145. Regardless of M.G.'s goals, the TALK School was appropriate throughout the 2024-2025 school year because it provided M.G. special-education services that were tailored to his unique needs.

146. Even if a hearing officer could find a private placement inappropriate based solely on some of the placement's goals, all of M.G.'s TALK goals during the 2024-2025 school year were appropriate.

147. The Hearing Officer erroneously excluded evidence about M.G.'s goals at the TALK School. The evidence shows that, even if some of M.G.'s goals were too ambitious for him, he had many appropriate goals, and his program met his needs. The IDEA does not require more for private placements. *See Mary Courtney T. v. Sch. Dist.*, 575 F.3d 235, 242 (3d Cir. 2009).

148. The Hearing Officer violated "the party-presentation principle" in denying Parents tuition reimbursement from January 2025 to June 2025. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) ("Because courts are essentially passive instruments of government, [they] rely on the parties to frame the issues for decision and decide only the questions presented." (quotation omitted)).

149. The CCIU did not argue during the due process hearing that the Hearing Officer should deny tuition reimbursement for January 2025 to June 2025 because of the goals that the TALK School developed for M.G. in December 2024.

150. The Hearing Officer also departed from his own rulings about the scope of the proceeding. Though the Hearing Officer refused to consider evidence that the CCIU denied M.G. equal educational opportunity under Section 504 and the ADA, the Hearing Officer included a sentence at the end of his decision stating that the CCIU did not discriminate against M.G. Ex. A. at 33.

## CAUSES OF ACTION

### COUNT I: THE IDEA, SECTION 504, AND THE ADA TUITION REIMBURSEMENT

151. Parents incorporate the above paragraphs as though fully set forth herein at length.

152. The Hearing Officer erred in failing to award Parents tuition reimbursement for January 2025 through June 2025.

153. Parents are entitled to tuition reimbursement for that period because the CCIU denied M.G. FAPE during the 2024-2025 school year, the TALK School was appropriate for M.G. when Parents enrolled him, and the Hearing Officer did not find that Parents failed to provide the CCIU proper notice or acted unreasonably.

154. Parents are also entitled to tuition reimbursement for January 2025 through June 2025 because the CCIU otherwise discriminated against M.G. during the 2024-2025 school year, the TALK School was appropriate for M.G. when Parents enrolled him, and the Hearing Officer did not find that Parents failed to provide the CCIU proper notice or acted unreasonably.

155. In denying M.G. FAPE and otherwise discriminating against him, the CCIU acted

with deliberate indifference to M.G.'s rights under Section 504 and the ADA.

156. Parents request an order awarding tuition reimbursement for January 2025 through June 2025 under the IDEA, Section 504, and the ADA due to the CCIU denying M.G. FAPE and otherwise discriminating against him by denying him equal educational opportunity.

**COUNT II: THE IDEA, SECTION 504, AND THE ADA**
**COMPENSATORY EDUCATION**

157. Parents incorporate the above paragraphs as though fully set forth herein.

158. For the reasons discussed above, the CCIU denied M.G. FAPE and otherwise discriminated against him during the 2024-2025 school year.

159. In denying M.G. FAPE and otherwise discriminating against him, the CCIU also acted with deliberate indifference to M.G.'s rights under Section 504 and the ADA.

160. If this Court does not award tuition reimbursement for January 2025 through June 2025, then M.G. is entitled to compensatory education for that period.

161. Because the CCIU failed to offer M.G. FAPE for the 2024-2025 school year, Parents had to fund a private placement to address his needs. If, as the Hearing Officer concluded, the private placement ceased to be appropriate in January 2025, then M.G. was denied appropriate programming from January 2025 through June 2025. Any such denial was the CCIU's fault for not meeting its legal obligations to M.G., and M.G. is entitled to compensatory education to remedy the denial.

162. In the alternative to tuition reimbursement, Parents request an order awarding compensatory education for January 2025 through June 2025 under the IDEA, Section 504, and the ADA due to the CCIU denying M.G. FAPE and otherwise discriminating against him by denying him equal educational opportunity.

**COUNT III: THE IDEA, SECTION 504, AND THE ADA**
**DECLARATORY AND INJUNCTIVE RELIEF**

163. Parents incorporate the above paragraphs as though fully set forth herein.

164. The CCIU predetermined M.G.'s educational program and denied him equal educational opportunity, in violation of the IDEA's individualization requirement, the IDEA's parental-participation requirement, and Section 504's and the ADA's nondiscrimination mandates.

165. In so doing, the CCIU was deliberately indifferent to M.G.'s and Parents' rights under Section 504 and the ADA.

166. Parents request an order declaring that the CCIU's policy or practice of limiting services for children with M.G.'s disabilities violates the IDEA, Section 504, and the ADA.

167. Parents request an order requiring the CCIU to provide its staff training on the IDEA's individualization requirement, the IDEA's parental-participation requirement, and Section 504's and the ADA's nondiscrimination mandates.

**COUNT IV: THE IDEA, SECTION 504, AND THE ADA**
**ATTORNEY'S FEES AND COSTS**

168. Parents incorporate the above paragraphs as though fully set forth herein.

169. Parents prevailed at the due process hearing.

170. Parents obtained important and significant relief.

171. The Special Education Hearing Officer awarded Parents five months of tuition reimbursement for the TALK School.

172. As the prevailing party, Parents are entitled to reasonable attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B), 29 U.S.C. § 794(a), and 42 U.S.C. § 12205 for the due process hearing and this action.

173. To the extent that the Hearing Officer concluded otherwise, he lacked jurisdiction

to do so, and his conclusion was error.

**WHEREFORE**, Parents respectfully request that this Court award some or all of the following relief: (1) declare that the CCIU denied M.G. FAPE and/or otherwise discriminated against M.G. and that the CCIU denied Parents meaningful participation in the special-education process; (2) award Parents tuition reimbursement for January 2025 through June 2025 or, alternatively, award compensatory education for January 2025 through June 2025; (3) order the CCIU to provide staff training on the IDEA's individualization requirement, the IDEA's parental-participation requirement, and Section 504's and the ADA's nondiscrimination mandates; (4) declare that the CCIU's policy or practice of limiting services for children with M.G.'s disabilities violates the IDEA, Section 504, and the ADA; (5) award attorney's fees and costs; and (6) grant any and all other relief that this Court deems appropriate.

Respectfully submitted,

*/s/ David J. Berney*
David J. Berney
Pa. Bar No. 67882
Kevin A. Golembiewski
Pa. Bar No. 316921
BERNEY & SANG
8 Penn Center
1628 JFK Boulevard, Ste. 1000
Philadelphia, PA 19103
djberney@berneylaw.com
Tel: 215-564-1030 (office)
*Counsel for Plaintiffs*

Dated: August 19, 2026